**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA

vs.                                                                Case No: 8:15-CR-286-T-24JSS

KHANJAR DANDACHE
_____/

**KHANJAR DANDACHE'S SENTENCING MEMORANDUM**
**IN SUPPORT OF A REQUEST FOR VARIANCE**
**PURSUANT TO 18 U.S.C. § 3553(a) FACTORS**

**COMES NOW**, the Defendant, **KHANJAR DANDACHE,** by and through his undersigned attorney and submits this Sentencing Memorandum in Support of his Request for Variance Pursuant to 18 U.S.C. § 3553(a).

**I.      Introduction, History and Characteristics of Khanjar Dandache**

This Memorandum and the accompanying letters and exhibit tendered to the Court are submitted to assist the Court in fashioning a reasonable and appropriate sentence framed by the advisory guidelines for **KHANJAR DANDACHE** in consideration of his complete and early acceptance of responsibility and the extensive punishment he has suffered as a result of his admitted wrong doing.

Khanjar Dandache is a soon to be sixty (60) year old man who has been a Hillsborough County resident for approximately thirty-three (33) years. He is a devoted family man and supportive husband, father and grandfather. He has raised three (3) adult children. Ahmed, thirty-three (33) years old is a restaurant/bar manager; Adham, thirty (30) years old is a healthcare administrator; and Maritza, twenty-seven (27) years old is a director

of business development. All are successful, respected and extremely supportive of their father in spite of his criminal actions. Mr. Dandache also has a sixteen (16) year old son, Shadi who is a high school student making exceptional grades and anticipating college. As a consequence of this admitted criminal conduct, Mr. Dandache has paid dearly in terms of the loss of the stellar reputation he has toiled years to earn, financial distress that he will never overcome and the severe impact that his conduct has imposed on his family. He has worked to rectify the adverse effects of his wrongdoing by cooperating with the United States in this investigation in the form of a truthful proffer. As a man committed to his family for the duration of his life with a long history of good deeds and honest business dealings, his poor judgment under these particular facts and circumstances should not automatically occasion a lengthy removal from society.

    Khanjar Dandache was born on August 17, 1956 in Tyre, Lebanon. He was raised by loving but strict parents. His father was a banana farmer and his mother, a homemaker. Mr. Dandache grew up in a close knit family with five (5) sisters whom he supported in every endeavor. At age seven (7), he was enrolled in the AUB (American University Boarding School) not as a result of behavior issues but in an effort to significantly advance his educational opportunities. At thirteen (13), he returned to finish high school in Lebanon. Upon graduation, he began working to help support his family until 1977 when he immigrated by himself at twenty-one (21) years of age to the United States in search of additional education and to start a family.

Upon his arrival, he was accepted into the ELS Center for Language at Eckerd College. Upon mastering language barriers, he enrolled and successfully received his Associate of Arts degree from St. Petersburg College. It was there where he met and in 1981, married his first wife, Marisabel Mendez. Mr. Dandache moved to Gainesville, Florida to attend the University of Florida and after two (2) years of study returned to accept a very solid job with Uniway Corporation. He worked his way up to General Manager of the Sales Department. It was during this time that he parlayed his love for cars into securing a wholesale dealers license and buying and selling cars to and for friends and family. Although he divorced in 1991, he remains a close friend of Marisabel to this day, continuing to co-parent their children together and assist each other when needed.

In 1995, Khanjar Dandache took one of the most important and gratifying steps in his life by being naturalized as a United States citizen. He continued to work extremely hard and supported his children, both emotionally and financially . When Uniway closed locally, he briefly moved to Atlanta with Uniway for eleven (11) months. Desperately missing his children and the Tampa area, he returned and accepted a sales position at the Gold and Diamond Source. Through this employment, he was introduced to his second wife, Neda Alfakhour and they married in 1997. Shortly thereafter, his fourth child, Shadi was born. Mr. Dandache remains married to this day.

In 1999, Mr. Dandache had the opportunity to work as a salesman for companies that sold heavy equipment. Much of this equipment was being shipped overseas and it was during this time that he learned about the exporting business. Falling back on his passion, in 1995 he used this experience to open his own business wholesaling vehicles locally in addition to buying and then selling vehicles to dealers in the Middle East, Europe and Africa. American low and mid-priced vehicles were highly sought after and business was consistent, providing Khanjar Dandache with a very comfortable upper middle class income. Some clients and dealers would travel to the United States to purchase cars in bulk through the Defendant's company, Bayridge Services at auction and ship them to their respective locales. Other dealers would wire funds to purchase cars and after purchase at the auction, a shipping company would handle documentation and the shipping of the vehicles to the purchaser. Mr. Dandache grew this business of for years and the areas of export were expanded based on need and opportunity.

In 2010, severe changes to export regulations resulted in a dramatic shift in business. Mr. Dandache lost approximately eighty percent (80%) of his clients. Dealers were unable to get visas to travel to and from the United States, fees for exports surged and many ports were now restricted in use. Income plummeted and the financial stress became overwhelming. Mr. Dandache began having a difficult time providing for his family and the business debt was mounting although he continued to wholesale vehicles locally. He attempted to reduce business expenses. This business decline continued off-and-on and Mr.

Dandache, setting aside his pride had to lean on his ex-wife and children to help pay business expenses and every day costs of living. They periodically provided him thousands of dollars during the years leading up to the circumstances that resulted in his poor judgment and pressure to commit the instant offense. In addition to the checks and wire transfers from his ex-wife, Marisabel Clark ($35,800.00) and daughter, Maritza Dandache ($13,600.00), attached hereto as Exhibit "A", his sons also provided him cash on a repetitive basis from the tip money they earned as bartenders during this period.

## II. Request for a Reasonable Sentence

It is respectfully suggested that in light of the mitigating history and characteristics of Mr. Dandache, including the aberrant nature of his offense and the facts and circumstances surrounding the non-violent nature of the offense, a sentence of minimal incarceration followed by a term of supervised release would constitute a reasonable sentence which is "sufficient but not greater than necessary" to accomplish the purposes of sentencing. In addition to having already spent fifty-one (51) days in custody, Mr. Dandache was confined to his home twenty-four (24) hours per day, seven (7) days per week without exception from August 28, 2015 to February 9, 2016 when the condition was deleted by the Magistrate Judge.

## III. Criminal Conduct

The instant criminal conduct culminated with the Khanjar Dandache's arrest on July 8, 2015 for the offense of Money Laundering in violation of 18 U.S.C. §1956(a)(3)(b).

In May, 2015 the DEA was utilizing a Confidential Source (CS) who was cooperating with the agency in exchange for financial compensation and had no pending criminal charges. This particular CS was an acquaintance of the Defendant, Khanjar Dandache as a result of having purchased a Volkswagen from Mr. Dandache approximately five (5) years earlier.

In what is commonly referred to as a "reverse sting", the CS saw Mr. Dandache at a restaurant while he was eating lunch with a friend during the week of May 10, 2015 and initiated a short unrecorded conversation regarding sending money to Lebanon, purchasing a vehicle for his brother and requesting assistance in facilitating the same. Mr. Dandache agreed to assist and the CS reported the context of the conversation to DEA. He was motivated to assist the CS due to the desperate financial circumstances he was experiencing at the time.

On June 3, 2015, the CS and Mr. Dandache met and the Defendant was asked whether he would agree to conceal money inside cars and ship them to Lebanon. The meeting was audio and video recorded. Although Mr. Dandache indicated that concealing money in cars could not be done, he agreed to assist in concealing the money by depositing it to his accounts in small amounts, purchasing vehicles by check or draft and shipping the vehicles to Lebanon for a six percent (6%) fee. The CS stated the sum to be One Hundred Thousand Dollars ($100,000.00).

Communication between the CS and Mr. Dandache was then limited and on June 30, 2015, they met at the Bayridge office and further discussed the details of the agreement to conceal the money by purchasing cars and shipping to Lebanon. When sold, Mr. Dandache's nephew would facilitate the money reaching representatives of the CS. The meeting was audio and video recorded. At this time, the CS increased the sum to One Hundred Fifty Thousand Dollars ($150,000.00) for the first time. Mr. Dandache's six percent (6%) fee was to be Nine Thousand Dollars ($9,000.00).

Subsequently, on July 8, 2015 the parties met outside Mr. Dandache's office and an exchange of the One Hundred Fifty Thousand Dollars ($150,000.00) took place while the event was being audio and video recorded. The Defendant was arrested at the scene. Post *Miranda*, Mr. Dandache admitted that the money involved was suspicious and the proceeds may have been a result of some unlawful activity.

### IV.   Variances in Consideration of 18 U.S.C. § 3553 Factors

The Court may vary from the advisory Guidelines to impose any reasonable sentence based on a consideration of the § 3553 factors. A variance from the advisory Guidelines is warranted and a sentence of minimal incarceration with reasonable conditions is authorized and appropriate under the facts of this case.

The factors set forth in Title 18, United States Code, Section 3553, are as follows:

(a) Factors to be considered in imposing a sentence.–The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in

paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for–(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–

(5) any pertinent policy statement–

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

The first set of factors in §3553(a)(1), the nature and circumstances of the offense and the history and characteristics of the Defendant favor Mr. Dandache. His criminal conduct was out of character in nature from his upbringing, his educational pursuits despite his language barriers, the example he has been to his respective children, the long standing care and the love shown to his family, friends and community. This instant crime is non-violent and he has no prior convictions or arrests. He has been consistently employed and committed to keeping his business afloat after circumstances not within his control altered his ability to earn. The path leading to his criminal conduct was paved by financial stress and its duration was less than sixty (60) days. His actions during the course of the commission of this crime should not fully define Khanjar Dandache in that he truly has touched the lives of many people as clearly shown by the sixteen (16) letters of support previously provided for the Court's review.

The second set of factors in §3553(a)(2)(A)-(D) addresses several traditional sentencing considerations. In this case, there is certainly no indication of a need to protect the public from further criminal conduct by defendant. He has no prior arrests or convictions and has continued to abide by all laws since his release from custody and while under Pre-Trial Supervision. There is no indication of a need to provide the Defendant correctional treatment. Mr. Dandache has demonstrated acceptance of responsibility for his criminal conduct and has strong familial ties and support. A sentence that varies from the advisory guideline range such as minimal incarceration is more than adequate to reflect the seriousness

of the offense, to promote respect for the law, to provide just punishment for the offense and be efficient in deterring Mr. Dandache from committing future criminal offenses.

In fact, recidivism studies by the Sentencing Commission have shown that first time, nonviolent offenders with similar characteristics as Mr. Dandache have a very low likelihood of violating the law in the future or even violating the terms of their court imposed supervision.[1]

Through minimal incarceration and subsequent supervision, the mere fear of additional incarceration if he were to violate the terms of his court supervision will be sufficient to deter Mr. Dandache and to protect the public from any future crimes. Given Mr. Dandache's age, his education, and the fact that he has never previously been arrested in the past, it is very unlikely that he will re-offend again and certainly a substantial term of incarceration will not in any way provide any greater deterrence then in the fear of violating the terms of his court supervision and being sent to jail.[2]

---

[1] The Commission's Report which is entitled, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, May 2004, can be located at www.ussc.gov (Noting among other things that nonviolent offenders with 0 criminal history points commit new law violations only 3.6% of the time and that offenders with high school educations, non-nonviolent drug offenders, offenders who provide "substantial assistance," and offenders who are employed are far less likely to reoffend than violent offenders with little or no education, no employment and who have not provided "substantial assistance.").

[2] *See The Effects of Imprisonment: Specific Deterrence and Collateral Effects*, Center For Criminology & Social Studies, February 14, 2014 at p. 4. "The length of time and offender spends in prison on the first prison sentence has no discernible impact on the likelihood that he or she will re-offend." Finding, "For those who are imprisoned for the first time, the length of time in prison appears to be irrelevant to future offending.... These data, however, suggest that judges when sentencing and offender to a first prison sentence should not a very the sentence length because of a belief that sentence length affects re-offending."

This offense has been an embarrassing, eye-opening experience which has given Mr. Dandache significant time to reflect during his initial incarceration and strict home confinement on how his criminal conduct has devastated his future in that he will lose his auto wholesalers license, irreversibly affecting his future income.

The fourth and fifth factors in § 3553(a)(4)-(5) require the Court to consider the Guidelines and Policy Statements applicable to the case. As set forth above, variance from the advisory sentencing guidelines should be considered by the Court based upon the nature and circumstances of the non-violent offense, Mr. Dandache's lack of history or need to protect the public by significant incarceration and his acceptance of responsibility.

### IV.   Conclusion

Accordingly, **KHANJAR DANDACHE** asks the Court to consider a variance in the instant case.

He has shown selflessness in his life long commitment to his family and community. Mr. Dandache is a man of documented character. In a time of great vulnerability he was presented with a plan to commit an offense that would provide him with short-term financial gain which was much needed at the time - a plan he did not seek. He is remorseful and has cooperated with the Government in a truthful fashion. To date, Mr. Dandache's punishment has included temporary incarceration, personal and public humiliation, loss of a career and substantial financial loss. He will suffer further incarceration separating him from his wife, adult children and especially his sixteen (16) year old son Shadi and first grandchild, ten (10) month old Sloane.

In light of the above, **KHANJAR DANDACHE** would request the Court consider a variance to the low end of Total Offense Level 15 which would constitute incarceration for eighteen (18) months followed by an appropriate term of supervised release.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System which will send a Notice of Electronic Filing to Christopher Murray, Assistant United States Attorney, 400 North Tampa Street, Suite 3200, Tampa, Florida 33602, this   10th   day of May, 2016.

**Law Offices of Brian E. Gonzalez, P.A.**
2917 W. Kennedy Blvd., Suite 120
Tampa, Florida  33609
(813)  224-0632

  /s/   Brian E. Gonzalez
**BRIAN E. GONZALEZ**
**Florida Bar No: 504270**
**brianegonzalez@yahoo.com**